IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HOWARD C. HUGHES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-1230-P-BN |
| | § | |
| INSTITUTE OF APPLIED | § | |
| TECHNOLOGY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for initial screening pursuant to 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Jorge A. Solis. The undersigned issues the following findings of fact, conclusions of law, and recommendation that the Court should dismiss this action without prejudice for failure to prosecute.

## Background

Plaintiff Howard C. Hughes, a resident of Frisco, Texas, a city located in Collin County and Denton County, Texas, within the Sherman Division of the Eastern District of Texas, *see* 28 U.S.C. § 124(c)(3), has filed this lawsuit *pro se* against the Institute of Applied Technology ("IAT"), which Hughes represents is located in Abu Dhabi, United Arab Emirates ("UAE"). *See* Dkt. Nos. 3, 18, & 13.

Hughes alleges that IAT employed him as an "Assistant Principal on the Umm Al Quwain Campus for the [IAT] High School" and "contends that IAT breached its

contractual agreement" by "[t]erminating the IAT employment contract in violation/breach of employment contract item #18" and by failing "to pay [his] housing and hotel accommodations in violation/breach of employment contract item #9 regarding housing accommodations." Dkt. No. 3 at 1. Hughes further alleges "that Violation of International Laws by [a] School Official ... were committed when he refused to Return [Hughes's] *Passport, unless [he] paid him 25,000.00 Cash AED" and that he "was retaliated against by [the same official] and other IAT School Officials." *Id.*

None of the facts Hughes alleges concern events that took place in the United States. *See* Dkt. Nos. 3, 18, & 13. Hughes nevertheless alleges that he

> is filing the complaint, and invoking United States Federal Jurisdiction due to [certain] Labor Law Statutes:
>
> Employment relationships in the United Arab Emirates are governed by United States Federal Law No. 8 of 1980 Regulating Labor Relations as amended by Federal Laws No. 24 of 1981, No. 15 of 1985 and No. 12 of 1986 (the Labor Law).

Dkt. No. 3 at 1 (emphasis removed).

Hughes has been granted leave to proceed *in forma pauperis*. *See* Dkt. No. 6. And the Court issued a questionnaire to determine, among other things, Hughes's bases for filing his claims here. *See* Dkt. No. 7 ("Question No. 2: A complaint must contain a statement of the grounds for the Court's jurisdiction. See Fed. R. Civ. P. 8(a). Please state how this Court has jurisdiction – for example, does the case presents diversity jurisdiction (28 U.S.C. § 1332), or does the case present a federal question under the Constitution or laws of the United States (28 U.S.C. § 1331), or does the case

-2-

presents some other basis for jurisdiction?" "Question No. 3: Your complaint states that there is 'United States Federal Jurisdiction due to … Labor Law Statutes' you cite, including Law No. 8 of 1980 Regulating Labor Relations. Although you claim that this law and other laws are laws of the United States, the cited laws appear to be laws of the United Arab Emirates. Please explain how any laws of the United States govern your dispute." "Question No. 4: Please explain to the Court how you were hired to be an Assistant Principal for Defendant. For example, if Defendant contacted you in the United States, please explain every contact Defendant had with you in the United States, including – for each contact – when and how Defendant contacted you in the United States." "Question No. 5: Please explain how this Court has jurisdiction over Defendant. That is, explain how the actions of Defendant affect or concern the United States.").

The Court's questionnaire warned Hughes that "[f]ailure to provide answers to all questions may result in the dismissal of the complaint for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b)." *Id.* at 1.

May 29, 2015 was the original deadline for Hughes to file verified responses to the Court's questionnaire. But the Court granted Hughes two one-month extensions of that deadline, *see* Dkt. Nos. 10 & 12, before he filed responses (unverified) to the first question, asking for itemized information regarding his claims, *see* Dkt. No. 13. The Court then granted Hughes two more one-month extensions as to the unanswered questions (set out above), *see* Dkt. Nos. 15 & 17, setting August 21, 2015 as the final deadline, *see* Dkt. No. 17 (warning Hughes "that the Court will not grant further

extensions of this deadline"). The Court also denied further extensions of time sought by Hughes. *See* Dkt. Nos. 18, 19, 20, 21, 22, 23, 24, 25, & 26.

Responses to the remaining questions were not filed by August 21, 2015. In fact, now, almost nine months past the original deadline, the Court still has not received such responses.

## Legal Standards and Analysis

<u>Extraterritoriality</u>

Hughes appears to assert that this Court has jurisdiction over his lawsuit because federal law creates his causes of action. *See* Dkt. No. 3 at 1 ("invoking United States Federal Jurisdiction due to [certain] Labor Law Statutes"). But the undersigned cannot agree with this assessment.

First, although Hughes states that "[e]mployment relationships in the [UAE] are governed by United States Federal Law No. 8 of 1980," *id.*, the Court has questioned this assertion by pointing out that the law Hughes appears to invoke is not a law of the United States but a law of the UAE, *see* Dkt. No. 7, Question No. 3; *cf. O'Loughlin v. The Pritchard Corp.*, 972 F. Supp. 1352, 1358 (D. Kan. 1997) ("As a foreign corporation doing business in the UAE on the ADNOC project, [defendant] was subject to the laws of the UAE, including Federal Law No. 8 Year 1980 Re (Federal Law 8).").

Next, to the extent that Hughes asserts that labor and employment laws of the United States govern his dispute with IAT, *see* Dkt. No. 3 at 1 (asserting that he "was retaliated against"), "[i]t is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the

territorial jurisdiction of the United States,'" *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) (quoting *Foley Bros. v. Filardo*, 336 U.S. 281, 285 (1949)); *cf. O'Loughlin*, 972 F. Supp. at 1364 ("When a statute might intrude upon the 'delicate field of international relations' Congress must clearly express its affirmative intention to so intrude." (quoting *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 147 (1957))).

While some potentially applicable federal employment laws, such as Title VII and the Age Discrimination in Employment Act ("ADEA"), can apply extraterritorially, Hughes has not alleged that IAT even has ties to – or, more importantly, is controlled by – a United States corporation or its subsidiaries. *See Denty v. SmithKline Beecham Corp.*, 109 F.3d 147, 150 (3d Cir. 1997) (holding that the "ADEA applies abroad only when (1) the employee is an American citizen and (2) the employer is controlled by an American employer"); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 65 (D.D.C. 2002) (holding that "Congress has provided that Title VII will only have an extraterritorial application when: (1) the employee is a U.S. citizen and (2) the employee's company is controlled by an American employer").

Finally, cognizant that Hughes is proceeding *pro se*, the Court gave him an explicit opportunity to explain some connection between his employment with IAT and the United States. *See* Dkt. No. 7, Question Nos. 4 & 5. But, after being given more than sufficient time to provide such information, Hughes has not alleged a connection.

<u>Failure to Prosecute</u>

Federal Rule of Civil Procedure 41(b) allows a court to *sua sponte* dismiss an

action "with or without notice to the parties," *Boudwin v. Graystone Ins. Co., Ltd.*, 756 F.2d 399, 401 (5th Cir. 1985), for failure to prosecute or for failure to comply with the federal rules or any court order. Such authority "flows from the court's inherent power to control its docket and prevent undue delays in the disposition of pending cases." *Id.* (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962)); *see also Rosin v. Thaler*, 450 F. App'x 383, 383-84 (5th Cir. 2011) (per curiam) ("A district court may *sua sponte* dismiss an action for failure to prosecute or failure to obey a court order." (citing FED. R. CIV. P. 41(b); *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988))).

A Rule 41(b) dismissal may be with or without prejudice. *See Long v. Simmons*, 77 F.3d 878, 879-80 (5th Cir. 1996). But a dismissal with prejudice is appropriate only if the failure to comply with the court order was the result of purposeful delay or contumacious conduct and the imposition of lesser sanctions would be futile. *Id.* at 880; *see Berry v. CIGNA / RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992). "Several" of the following four factors generally must be present before a district court may dismiss an action with prejudice based on a litigant's refusal to follow a court order:

> (1) "the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct;" (2) the violation of the [Court's] order must be attributable to the client instead of the attorney, (3) the violating party's misconduct "must substantially prejudice the opposing party;" and (4) a less drastic sanction would not substantially achieve the desired deterrent effect.

*Doe v. Am. Airlines*, 283 F. App'x 289, 291 (5th Cir. 2008) (per curiam) (quoting *F.D.I.C. v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994); other citations omitted); *see also Clewis v. Medco Health Solutions, Inc.*, No. 3:12-cv-5208-L, 2014 WL 840026, at *6

(N.D. Tex. Mar. 4, 2014) (distinguishing *Berry* – in which the Fifth Circuit stated, "Generally, where a plaintiff has failed only to comply with a few court orders or rules, we have held that the district court abused its discretion." 975 F.2d at 1191 n.6 (citations omitted) – because "[i]n *Berry*, the plaintiff's conduct was merely negligent, and he had not been warned by the court prior to dismissal," whereas Clewis's conduct was "intentional and willing").

By failing to respond to pertinent questions in the Court's questionnaire, Hughes has prevented this action from proceeding, because he has failed to provide the Court information it needs to screen this lawsuit under 28 U.S.C. § 1915(e)(2)(B). He has therefore failed to prosecute his lawsuit and obey the Court's order. A Rule 41(b) dismissal of this lawsuit without prejudice is warranted under these circumstances. And the undersigned concludes that lesser sanctions would be futile. The Court is not required to delay the disposition of this case until such time as Hughes decides to comply with the Court's orders.

Accordingly, the Court should exercise its inherent power to prevent undue delays in the disposition of pending case and *sua sponte* dismiss this action without prejudice to Hughes's right to re-file it in a jurisdiction with some connection to its subject matter. For example, while Hughes himself may connect his allegations to the United States, he resides in the Sherman Division of the Eastern District of Texas, not the Dallas Division of the Northern District of Texas.

**Recommendation**

The Court should dismiss this action without prejudice to Hughes's right to re-file it in a jurisdiction with some connection to its subject matter.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 25, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE